ORIGINAL                    ORIGINAL

Robert J. Beles Bar No. 41993
H. Ernesto Castillo Bar No. 220900
Law Offices of Beles, Beles, Costy & Castillo
One Kaiser Plaza, Suite 2300
Oakland, California 94612-3642
Tel. No. (510) 836-0100
Fax No. (510) 832-3690

Attorneys for *Defendant*
*Todd William Growney*

# United States District Court
## Northern District of California
### San Francisco Courthouse

|  |  |
|---|---|
| United States of America, <br><br> *Plaintiff*, <br><br> vs. <br><br> Todd William Growney, <br><br> *Defendant*. | No. **11-CR-00195-CRB-1** <br><br> RESPONSE TO GOVERNMENT'S DISCUSSION OF SUPPLEMENTAL AUTHORITIES <br><br> Date: Wednesday, March 13, 2012 <br> Time: 2:00 p.m. <br> Judge: Hon. Charles R. Breyer <br><br> *Speedy trial act: time excludable pursuant to 18 U.S.C. section 3161(h)(1)(D) and 18 U.S.C. section 3161(h)(7)(A)* |

## RESPONSE TO GOVERNMENT'S DISCUSSION OF SUPPLEMENTAL AUTHORITIES

### 1. Response

The government says that it previously characterized the forensic search of the laptop as an "extended border search", as if this was the issue raised by the suppression motion, and then states that the *Cotterman en banc* opinion stated that the extended border search doctrine does not apply to a laptop seized at the border. This is misleading because the issue raised in the suppression motion was whether the government had to show a "reasonable suspicion" to justify the extended search of the laptop, however characterized, not whether the search was an "extended border search." Although the government briefly mentioned "extended border searches" in its opposition, the suppression memorandum relied on *United States v. Seljan*, 547 F.3d. 993, 1000 (9th Cir. 2008), in which the Ninth Circuit assumed without deciding that a

ORIGINAL                                                                    ORIGINAL

"reasonable suspicion" of criminal activity would be required for any detention and search beyond a routine examination of the traveler's belongings at the border. *Seljan* relied on *United States v. Ramsey*, 431 U.S. 606, 618 (1977), in which the Supreme Court suggested that a border search might become "'unreasonable' because of the particularly offensive manner in which it is carried out." Defendant argued that an extensive forensic search of defendant's laptop qualifies as a general exploratory search under *Ramsey*. (Suppression memorandum, pages 5-7.) Defendant's reply memorandum also cited *United States v. Jones*, 132 S. Ct. 945 (January 23, 2012), in which the Supreme Court unanimously held that warrantless installation and use of GPS tracking devices violate the Fourth Amendment even though traditional visual surveillance of a suspect requires no warrant or showing of probable cause. (Suppression reply memorandum, page 2.) Defendant did not rely on any extended border search doctrine in his suppression motion.

The *Cotterman en banc* opinion similarly relied on *Seljan* and *Ramsey* in holding that the extended forensic search of Cotterman's laptop required a showing of reasonable suspicion. See Cotterman slip opinion at pages 4, 22-23, 26-27. The *en banc* court held:

> "An exhaustive forensic search of a copied laptop hard drive intrudes upon privacy and dignity interests to a far greater degree than a cursory search at the border. It is little comfort to assume that the government—for now—does not have the time or resources to seize and search the millions of devices that accompany the millions of travelers who cross our borders. It is the potential unfettered dragnet effect that is troublesome."

Slip opinion, page 31.

The government finally states that it previously argued that it had "reasonable suspicion" to search defendant's laptop. The defense had previously argued that the government did not have reasonable suspicion to support an extended forensic search of the laptop. (Suppression memorandum, pages 7-8.) In their opposition memorandum, the government defined "reasonable suspicion" as existing "when an officer is aware of specific, articulable facts, which together with objective and reasonable inferences, form a basis for suspecting that the particular person to be detained has committed or is about to commit a crime," citing *United States v. Salinas*, 940 F.2d 392 (9th Cir. 1991.) (Opposition memorandum, page 12.) The government's

concept of "reasonable suspicion" is, of course, incomplete, since to support a search, it is never enough to merely have information that the suspect has committed a crime. The government must have "reasonable suspicion" that a search of a particular place or thing will result in the seizure of contraband or evidence of a crime. This is clear in the *Salinas* opinion, which found a lack of reasonable suspicion to detain a car that agents suspected might be carrying marijuana:

> "It is a well known fact, of which we can take judicial notice, that Mexican males, driving old model General Motors sedans, blend into the morning commuter traffic to transport tons of Mexican marijuana from ports of entry in small towns along the Arizona-Sonora border. It is also well known that many thousands more Mexican males drive old model General Motors cars to work every morning. This phenomenon might justify the installation of a checkpoint where all cars could be inspected, or subjected to canine sniffing, but it does not justify the random stopping of 'suspicious' looking cars because the officer knows that a substantial number of them will, indeed, be carrying contraband.

> Thousands of United States citizens of Mexican ancestry drive old cars on perfectly legitimate errands, with 100 pounds of potatoes or carpenter tools or other commodities weighing down the rear springs. A driver who glances at a border patrol car does not thereby become a suspicious character."

*United States v. Salinas*, 940 F.2d at 394-395.

The *Cotterman en banc* opinion found that reasonable suspicion that child pornography would be found on Cotterman's computer existed to justify an extended forensic search of the computer, based on the following information:

> "Cotterman's 1992 conviction for two counts of use of a minor in sexual conduct, two counts of lewd and lascivious conduct upon a child, and three counts of child molestation — and that he was potentially involved in child sex tourism." Opinion, pages 5, 37.

> Cotterman's identification as a sex offender "who travel[ed] frequently out of the country" and who was "possibly involved in child sex tourism" based on the country he had visited as a tourist, Mexico. Opinion, pages 37-38.

Based on this information, the Ninth Circuit concluded that the agents had reasonable suspicion that Cotterman's laptop computer would contain child pornography. The Ninth Circuit found that Cotterman's criminal convictions alone would not provide reasonable suspicion, but coupled with the additional information that Cotterman traveled frequently to destinations associated with child sex tourism, there was reasonable suspicion.

In contrast, defendant had no criminal convictions at all and had traveled to Japan on a business trip, not as a tourist. The agents knew that defendant's employment involved

ORIGINAL                                                          ORIGINAL

developing computer game software, which would provide a neutral reason for defendant's possessing a laptop computer.  The agents had no information that Japan was a destination country for persons involved in child sex tourism or that defendant might be engaging in such activities. The agents' reason for suspecting defendant of transporting child pornography in 2009 was some information that defendant may have purchased access to websites containing child pornography in 2005. (CPB report, p. 1, Bates no. 0038.) This was far less for suspicion than the serious criminal convictions for child sex offenses and tourism travelling involved in *Cotterman.*

The government finally argues that, upon examining defendant's laptop, "the agents found filenames indicative of child pornography." This is also misleading because what the agents found were not files or filenames associated with deleted files but ***links*** to material that the agents determined were located on some external location and ***not*** on the laptop. (CPB report, p. 2, Bates no. 0039, discussed at suppression memorandum, p. 2.) The agents did not find any files on the laptop that they thought might be child pornography during their visual examination of the laptop contents at the airport. As defendant was a computer game designer who had just returned from a business trip to Japan, the agents would have been aware that the external location source on which the actual files were located could be in Japan. There was no other indication that defendant's laptop would contain child pornography.

Based on this information, the agents seized the laptop and sent it to a government forensics laboratory for an extensive forensic search of the laptop. The forensic search uncovered five thumbnail images [1] that appeared to be of child pornography. Based on the forensic search results, the government obtained a search warrant for defendant's home. A desktop computer at defendant's home contained a larger number of additional thumbnail images, some of which appeared to be of child pornography. No actual child pornography videos or full sized images were found.

---

[1] Thumbnails are low-resolution versions of images that the computer creates in the background to catalog such images. Thumbnails cannot be expanded back to the full sized images.

## 2. Conclusion

It is apparent that the government does not want this court to give anything more than a cursory consideration to the controlling en banc opinion in *Cotterman*, since it has opposed defendant's motion for further briefing. The en banc opinion is a complex discussion that deserves more respect than the superficial discussion the government offers. Defendant suggests that supplemental briefing on the issue would be in the interests of justice.

Dated: Oakland, California, Tuesday, March 12, 2013.


Robert J. Beles
H. Ernesto Castillo
Attorneys for *Defendant* TODD WILLIAM GROWNEY