MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6831
    Fax: (415) 436-7234
    Email: Laura.Vartain@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. CR 11-0195 CRB |
| Plaintiff, | ) |
| | ) UNITED STATES' SUPPLEMENTAL |
| v. | ) MEMORANDUM IN OPPOSITION TO |
| | ) DEFENDANT'S MOTIONS TO SUPPRESS |
| TODD WILLIAM GROWNEY, | ) EVIDENCE |
| | ) |
| Defendant. | ) DATE: April 10, 2013 |
| | ) TIME: 2:00PM |
| | ) |

## I. INTRODUCTION

The Defendant Todd Growney has moved to suppress evidence seized as a result of a border search conducted at San Francisco International Airport.[1] The search had two stages. First, during a manual search of Growney's electronic equipment, including his laptop, Customs and Border Patrol

---

[1] Defendant Todd Growney filed two motions to suppress evidence on May 21, 2012. On March 8, 2013, the Ninth Circuit issued *United States v. Cotterman*, No. 09-10139 (9th Cir. March 9, 2013) (en banc). Defendant requested additional briefing regarding *Cotterman*'s impact on the pending motions, and on March 13, 2013, the Court ordered additional briefing. Defendant filed supplemental briefing on March 29, 2013.

UNITED STATES' SUPP. MEMORANDUM
CR 11-0195 CRB

officers ("CBP") located video filenames on the laptop that explicitly referenced child pornography. When questioned about these, Growney was nervous and evasive. Second, after the manual search, agents conducted a forensic examination of the computer using software to search the computer and found images of child pornography, which Growney now seeks to suppress. The pending motion to suppress does not challenge the manual search, only the forensic examination. Under border search doctrine, including *United States v. Cotterman*, No. 09-10139 (9th Cir. March 9, 2013) (en banc), the forensic examination was proper because it was supported by reasonable suspicion. Having already found video filenames explicitly referencing child pornography during a manual search, the agents had reasonable suspicion to conduct a forensic examination.

## II. THERE WAS REASONABLE SUSPICION TO CONDUCT THE FORENSIC EXAMINATION OF GROWNEY'S COMPUTER.

### A. Reasonable Suspicion to Conduct a Forensic Examination May Arise From a Manual Search.

The Ninth Circuit recently held that a forensic examination of a computer at the border must be supported by reasonable suspicion. *Cotterman*, No. 09-10139 at *28.[2] *Cotterman* does not alter the standard for a manual review of computer at the border, which does not require reasonable suspicion. *Id.* at *14 (turning on electronic devices and viewing image files proper absent particularized suspicion).[3] It is the subsequent, forensic examination that must be supported by "particularized and objective facts." *Id*. at *17. Particularized and objective facts may arise from a manual search or from other factors: "Suspicionless searches of the type approved in *Arnold* will continue; border officials will

---

[2] While *Cotterman* was published after the government filed its Opposition, the government's Opposition argued that the forensic examination of Growney's computer was supported by reasonable suspicion, and the arguments made in the opposition are consistent with *Cotterman* in all relevant respects. *See e.g.*, Dkt. # 41 (Opposition to Motions to Suppress). The only difference is that the government had previously argued that the forensic examination could be considered an extended border search, and *Cotterman* made clear that a forensic examination is a border search, not an extended search. *Cotterman,* at *17. Regardless, the standard argued in the opposition – reasonable suspicion – is the same standard that *Cotterman* held applied to such searches.

[3] The Court differentiated between a "manual review of files on an electronic device and an application of computer software to analyze a hard drive" and required reasonable suspicion only for the second type of review. *Id.* at *14. The Court made clear that to the extent *United States v. Arnold,* 533 F.3d 1003, 1009 (9th Cir. 2008), had permitted suspicionless forensic examinations, it was no longer good law; however, the Court did not change the standard for the manual search, which does not require reasonable suspicion. *Id.* at n.6.

UNITED STATES' SUPP. MEMORANDUM
CR 11-0195 CRB

conduct further, forensic examinations where their suspicions are aroused by what they find or by other factors. Reasonable suspicion leaves ample room for agents to draw on their expertise and experience to pick up on subtle cues that criminal activity may be afoot." *Id.* at *26-27. In *Cotterman*, the agents did not identify child pornography during the manual search, but other factors gave rise to reasonable suspicion to conduct a forensic examination as part of a border search. Those factors included Cotterman's prior conviction for a child-related crime, his travel from a country known for sex tourism, and the presence of password protected files, which the agents could not access. Based on these factors, the Court upheld the forensic examination as supported by reasonable suspicion, despite the absence of any child pornography located during the manual search. *Id.* at *34.

      **B.    The Manual Search of Growney's Computer Gave Rise to Reasonable Suspicion to Conduct a Forensic Examination.**

Here, a manual search of Growney's computer gave rise to reasonable suspicion that criminal activity was afoot.[4] During the manual review, the agents located links to five video files. Although the files themselves were not accessible, the titles of those files were unmistakably child pornography.[5] The agents asked Growney about the videos and noted his nervous and evasive behavior. Dkt. # 43 (Rodriquez Decl.) at ¶ 4. Drawing on expertise and experience, the agents had reasonable suspicion to believe that criminal activity was afoot and on that basis conducted the further, forensic examination. No other factors were necessary to support reasonable suspicion.

Growney's arguments that the factors known to agents in *Cotterman* were more robust than those here, Dkt. # 67 (Def. Supplemental Memorandum) at 3, are not persuasive. In *Cotterman*, reasonable suspicion came from "other factors" because the agents did not find child pornography in their manual search. *Cotterman*, at *17. Nevertheless, the Court's consideration of the factors present in *Cotterman*

---

[4] No particularized suspicion was necessary to conduct the routine manual search of Growney's computer, *Cotterman,* at *26-27, *United States v. Arnold,* 533 F.3d at 1009, but Growney's purchase of child pornography in 2005 first alerted the CBP to Growney. Dkt. #43 (Rodriquez Decl.) at ¶ 3.

[5] The filenames were: (1) (Phtc) 08yo Valya-28***.avi; (2) ))(Kleuterkutje) (Kinderkutje)(Ptsc)(Pedo)jho Amber 8 B&B.mpg; (3) Asian Kids (10yo)Hard.mpg; (4) Nablot 1-4yo 9yo 10yo12Yo.avi; and (5) Pedoland-Ann 10Yo.avi. Agent Nogales's declaration explains that many of these titles use language commonly used in child pornography, including "Pedoland" as a reference to pedophiles. The ages in the titles were understood to refer to the ages of the children-victims. Dkt. # 42 (Nogales Decl.) ¶ 6.

UNITED STATES' SUPP. MEMORANDUM
CR 11-0195 CRB

that gave rise to reasonable suspicion is instructive and further compels dismissal of this motion.

First, a system alert notified agents that Cotterman was a convicted child molester, which the Court identified as a factor giving rise to reasonable suspicion. Here, too, a system alert notified agents that Growney had purchased from a child pornography website in 2005.[6] Second, Cotterman had password-protected files on his computer, which made the agents suspicious. Growney had video files that clearly indicated illegal content. That the videos themselves were not on the computer did not mean that no further illegal content would be found, and *Cotterman* highlights the importance of forensic examinations to probe deeper: "collectors of child pornography can hardly be expected to clearly label such files and leave them in readily visible and accessible sections of a computer's hard drive, particularly when they are traveling through border crossings. . ." *Id.* at *33. Here, the five videos gave the agents reasonable suspicion to search further because there was already evidence that criminal activity was afoot. On that basis, they conducted a proper forensic examination.

### III. CONCLUSION

For the reasons stated above and in the government's prior briefing on the pending motions to suppress, the motions should be denied in their entirety.

DATED: April 4, 2013

MELINDA HAAG
United States Attorney

_____/s/_____

LAURA VARTAIN HORN
Assistant United States Attorney

---

[6] Growney's argument that the information regarding his purchase was stale and could not give rise to reasonable suspicion again misses the point. The information was not needed to give rise to reasonable suspicion becauase the agents had already found video files. Further, Growney's authority for staleness concerns probable cause and is inapposite. Dkt. # 67 at 4 (citing *United States v. Chesher*, 678 F.2d 1353 (9th Cir. 1981) (discussing facts needed to establish probable cause to search a home).

UNITED STATES' SUPP. MEMORANDUM
CR 11-0195 CRB